Paul TAGLAVORE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17214.

United States Court of Appeals Ninth Circuit.

June 13, 1961.

Taylor & Crane, Fairbanks, Alaska (Fred D. Crane, Fairbanks, Alaska, of counsel), for appellant.

Warren C. Colver, U. S. Atty., and James R. Clouse, Jr., Asst. U. S. Atty., Anchorage, Alaska, for appellee.

Before CHAMBERS, ORR, and HAMLEY, Circuit Judges.

ORR, Circuit Judge.

This appeal involves a conviction for possession of narcotics and specifically raises the question whether the evidence upon which the judgment of conviction rests was procured in violation of appellant's constitutional rights. Such questions arise in nearly all appeals we are called upon to decide in

**264**

narcotics cases, involving as they do the cunning of the alleged offenders as they attempt to evade detection, and the efforts of the law enforcement officers to circumvent these attempts. It may be validly stated that in no field of law enforcement and detection is the work of the law officers more difficult; yet, difficult as detection may be, the arm of the law extends constitutional safeguards which must be respected. The factual situation presented at the trial of appellant is in substance as follows:

On May 3, 1958, James F. Calhoon was an investigator with the vice squad of the Alaska Territorial Police. Appellant at the time was employed as a cab driver with the Union Cab Company of Fairbanks, a job he sometimes took during the winter months when there was no construction work. At about 11:10 P.M. on this particular day Investigator Calhoon and several other police officers went to the offices of the Union Cab Company and arrested one of the owners of said Company on charges of violating the narcotics laws. Two boxes of cigarettes which were found by the police during the arrest were believed to be marijuana cigarettes. It appears that Inspector Calhoon, for reasons not appearing in the record, suspected that appellant was connected in some way with these narcotics violations. At any rate immediately following the arrest of the Cab Company's owner, and while still at the Cab Company's offices, Inspector Calhoon gave to Investigators Barkley and Borjesson of the Territorial Police a warrant for appellant's arrest. This arrest warrant, however, was not for a narcotics violation but for two minor traffic violations—failing to signal for a right turn and having faulty brake and signal lights. Inspector Calhoon testified at the trial that he had personally witnessed these violations the previous night, although he had not stopped appellant or issued a traffic citation at the time because he was busy doing other

police work. Instead he waited until the afternoon of May 3rd and then swore out a warrant for appellant's arrest. At the time he delivered this warrant to Inspectors Barkley and Borjesson, he directed them to go out at once and find appellant, and he informed them that there was an excellent chance that appellant would have marijuana cigarettes in his possession when they found him.

Armed with this warrant and this warning Inspectors Barkley and Borjesson set out to look for appellant; approximately five minutes later they saw him in downtown Fairbanks as he was about to enter the Wonder Bar. While Borjesson returned to his police vehicle to get the arrest warrant, Barkley called out to appellant that he wanted to talk to him. As appellant came to the edge of the sidewalk, Barkley crossed the street towards him and when about three or four feet away said, "I have a warrant for your arrest." At this point appellant took his left hand out from the pocket of his trousers and placed it to his mouth. He then turned around and made a dash for the doorway of the Bar. Inspector Barkley grabbed him and pushed him up against a wall and applied pressure to his throat. Upon doing this, Barkley testified, he saw what appeared to be cigarette paper in one corner of appellant's mouth. At this juncture Inspector Borjesson rushed back with the warrant; the two officers succeeded in wrestling the struggling appellant to the sidewalk and while Borjesson sat on his stomach Barkley continued to choke him until his mouth opened and the Inspector was able to remove what proved to be the remains of a marijuana cigarette. After being subdued appellant was incarcerated. The contents thus forcibly acquired from appellant's mouth, which were analyzed and found to contain marijuana, were the basis of the charge of possession of narcotics brought against appellant and were introduced at the trial over appellant's objection.[1] The question raised

1. No pretrial motion to suppress was made as provided for in Rule 41(e) of

the Federal Rules of Criminal Procedure, 18 U.S.C.A. However, when objection

is: was the possession of this evidence secured by illegal search and seizure?

■ Normally one's person or property may not be searched unless the authorities conducting the search have a search warrant which has been issued by a magistrate upon at least a showing of probable cause. Certain well-established exceptions exist to this basic rule. One such exception, within which the Government claims the instant case falls, is that incident to a valid arrest the person arrested may be searched without warrant. Thus where one has been legally arrested for the commission of a crime his person and, in most cases, his immediate surroundings at the time of arrest may be properly searched. The main purpose of this exception is to facilitate discovery of various elements and evidence of the crime for which the accused is being arrested, and also to remove weapons or other instrumentalities which might be used to resist the officers or for escape or similar purposes. If the search happens to uncover evidence of crimes other than the one for which the accused has been arrested, this evidence may also be used against him in prosecutions for the other crimes so discovered. Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L. Ed. 1399. Certain decisions even indicate that the arresting officers may deliberately look for evidence of other crimes in addition to that for which the arrest is being made. Charles v. United States, 9 Cir., 1960, 278 F.2d 386. However, there is one fixed and essential prerequisite to all of these searches: in each case there must be a valid, bona-fide arrest to which the search is merely incident. Where the arrest is only a sham or a front being used as an excuse for making a search, the arrest itself and the ensuing search are illegal. Worthington v. United States, 6 Cir., 1948, 166 F.2d 557; Henderson v. United States, 4 Cir., 1926, 12 F.2d 528, 51 A.L.R. 420. "An arrest may not be used as a pretext to search for evidence." United States v. Lefkowitz, 1932, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877. To put it in other words, the *search* must be incident to the *arrest*, and not vice versa.

■■ It is quite apparent that the attempted arrest of appellant under the traffic warrant falls within this latter evil: the traffic warrant was being used as a mere excuse to search appellant for marijuana cigarettes. It is a matter of common knowledge, and it was admitted by one of the arresting officers at the trial, that it is not ordinary police procedure to physically take a person into custody for a minor traffic violation such as appellant allegedly committed, especially when no traffic ticket or citation has theretofore been given. Here the arrest warrant was acquired by an inspector in the vice squad who suspected appellant of being connected with certain illegal narcotics activities of appellant's employer. This inspector kept the warrant until immediately after the arrest of said employer, late at night, whereupon he gave it to two other police officers with instructions to go arrest appellant and a warning that appellant might well have marijuana cigarettes in his possession. All of these facts make the true purpose of securing the arrest warrant obvious. As one of the two arresting officers testified: "It was assumed that [appellant] had marijuana cigarettes in his possession. We were going to search him for the cigarettes, yes, if he had any." That the purpose of search was uppermost in the arresting officers' minds is also evidenced by the fact that they immediately applied force to severely choke appellant after he put something into his mouth.

was made at the trial to the admission of the evidence, the trial judge elected to consider the objection on its merits, as § 41(e) gives him discretion to do. Under these circumstances the question of admissibility on the merits is properly before this court on appeal. Wrightson v. United States, 1955, 95 U.S.App.D.C. 390, 222 F.2d 556, 560–561. The Government does not contest this.

The violation of a constitutional right by a subterfuge cannot be justified, and the circumstances of this case leave no other inference than that this is what was done with the traffic arrest warrant here. Were the use of misdemeanor arrest warrants as a pretext for searching people suspected of felonies to be permitted, a mockery could be made of the Fourth Amendment and its guarantees. The courts must be vigilant to detect and prevent such a misuse of legal processes.

There is one additional problem in this case: the trial judge in ruling the disputed evidence admissible stated that in his opinion the arrest on the traffic warrant was never completed, but instead when appellant placed his hand to his mouth and started to run after being told there was a warrant for his arrest, the officers had a right to and did arrest him for committing a felony—possessing narcotics and attempting to destroy them—in their presence. We believe that this opinion of the trial judge is incorrect for three reasons:

## I. Appellant Was Not Arrested For A Narcotics Violation.

At no time during the trial did either of the arresting officers state that when appellant started to run they abandoned their attempt to arrest him on the traffic warrant and instead decided to arrest him for a narcotics violation. The testimony of Inspector Borjesson strongly indicates that he thought they were at all times arresting appellant for the traffic violation.[2] As for Inspector Barkley it is true that at one point during cross-examination he stated that he believed a felony had been committed in his presence—the attempted disposal of narcotics. However, it is also true that the copy of the traffic arrest warrant which was introduced during the trial contains a provision stating that it has been executed, which provision is signed by Inspector Barkley. The trial

judge's conclusion that appellant was not arrested on the traffic warrant is not supported by the record.

## II. There Was No Probable Cause To Arrest Appellant For A Narcotics Violation And Choke Him In This Manner.

While it is true that a police officer may, under proper circumstances, arrest a person without a warrant when he believes that person has committed or is committing a felony, it is required that he have "probable cause" for his belief in order for the arrest to be valid. Brinegar v. United States, 1949, 338 U. S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. Probable cause means more than bare suspicion. "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." 338 U.S. at pages 175–176, 69 S.Ct. at page 1310. On the record before us in the instant case we do not believe that the two inspectors had probable cause to arrest appellant for a narcotics violation and choke him so violently in their attempt to acquire evidence from him. It is possible that the Territorial Police, or at least Inspector Calhoon of the vice squad, had reasons for suspecting appellant of possessing narcotics, other than the mere fact of his being employed by a cab company whose owner had just been arrested on a narcotics charge, but if so these reasons do not appear in the record nor is it shown that the two arresting officers were made aware of them. All the record shows is that Inspector Calhoon told the two officers that there was an excellent possibility appellant would have some marijuana cigarettes in his possession. This admonition from a superior officer to look out for marijuana plus the observance by officer Barkley of appellant placing his hand

<hr/>

2. Inspector Borjesson testified: "We were arresting [appellant] on the warrant issued on a traffic violation, and in the investigation * * * at the time it was found that he had a cigarette in his mouth * * *."

to his mouth and trying to run was not sufficient to justify the violent treatment to which appellant was subjected. While attempting to run when confronted with arrest was strong evidence of guilt of something, it did not of itself indicate guilt of possessing narcotics. Likewise appellant's placing his hand to his mouth before running did not justify choking him, since the officers by their own admission did not know what if anything he had placed in his mouth and since the record is so lacking in evidence of grounds for them to believe it was narcotics.[3] Recent cases indicate that when extensive force is applied to an arrested person accused of crime, whether such force is violative of the accused's constitutional rights depends on whether the police acted reasonably under the circumstances in the given case. Compare Rochin v. People of State of California, 1952, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, with Espinoza v. United States, 5 Cir., 1960, 278 F.2d 802, certiorari denied 1961, 364 U.S. 827, 81 S.Ct. 625, 5 L.Ed.2d 55. See also Blackford v. United States, 9 Cir., 1957, 247 F.2d 745, 751–752. We believe that officers Barkley and Borjesson acted unreasonably under the facts of the instant case. On the record before us these officers, who were sent out to arrest appellant on a traffic violation, did not have probable cause to treat appellant as they did.

III. Regardless Of Probable Cause, The Illegal Activities Of The Police Render The Contested Evidence Inadmissible.

■■■ Such probable cause as did exist after appellant placed his hand to his mouth and ran was a direct product of the illegal attempt to arrest and search appellant on the traffic warrant. The police engaged in a deliberate scheme to evade the requirements of the Fourth Amendment by using a traffic arrest warrant to search appellant for narcotics they suspected he had on his person. The fact they accomplished their purpose by inducing appellant to attempt to destroy the narcotics, a happening which they may well have foreseen and contemplated, instead of by appellant submitting to the illegal arrest and search, does not remove the taint from the evidence so acquired. This is not a case where some minor technicality has been overlooked in acquiring an arrest or search warrant or where a police officer confronted with a sudden and unexpected situation has made a miscalculation in acting; such cases present a far different situation. Here instead we have a deliberate, pre-planned attempt by the police to violate a suspect's constitutional rights by engaging in a subterfuge. "It is the duty of the courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." Boyd v. United States, 1886, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746; Byars v. United States, 1927, 273 U.S. 28, 32, 47 S.Ct. 248, 71 L.Ed. 520.

The admission into evidence of the cigarette removed from appellant's mouth was error.

Reversed and remanded.

CHAMBERS, Circuit Judge (concurring).

Here we have "rough stuff" and I join in striking it down. Without indulging in explanation, I regard the

---

3. Barkley also testified that after pushing appellant up against the wall and applying pressure to appellant's throat he saw what looked like cigarette paper in one corner of appellant's mouth. However, appellant's arrest occurred when he was first grabbed by officer Barkley and his physical freedom restricted, and no events occurring after that can serve as probable cause to uphold the arrest or search. See Henry v. United States, 1959, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134. By the same token the fact that it turned out that appellant actually did have marijuana in his mouth can't be used retroactively to justify the arrest; an arrest is not justified by what the subsequent search discloses. Rios v. United States, 1960, 364 U.S. 253, 261–262, 80 S.Ct. 1431, 4 L.Ed.2d 1688; Henry v. United States, 1959, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134.

result here as wholly consistent with our case of Blackford v. United States, 247 F.2d 745.

In as simple a case as this, I see no harm in not holding that a motion to suppress was necessary, but I do not believe the case should be taken as authority that a motion to suppress is never necessary.