Raymond David **WHITTON**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 2256.

Supreme Court of Alaska.

April 1, 1975.

Herbert D. Soll, Public Defender, Anchorage, Stephen R. Cline, Asst. Public Defender, Fairbanks, for appellant.

Norman C. Gorsuch, Atty. Gen., Juneau, Catherine A. Chandler, Dist. Atty., Harry L. Davis, Asst. Dist. Atty., Fairbanks, for appellee.

## OPINION

Before RABINOWITZ, C. J., and ER-WIN, BOOCHEVER and FITZGERALD, JJ.

FITZGERALD, Justice.

Raymond Whitton was found guilty in the trial court of possession of heroin and now appeals from the conviction and sentence. His most substantial claim of error is that the police obtained a bench warrant on a minor charge as a pretext for making an otherwise unlawful search and so timed the arrest that a subsequent search was rendered unlawful. In addition Whitton challenges the sentence imposed by the trial court as excessive.

On December 19, 1973, Whitton was arrested by officers of the Fairbanks Police Department for public drunkenness. When he failed to make a required court appearance on the morning of December 21, a district judge ordered out a bench warrant for his arrest. Bail of $100 was endorsed on the warrant. Shortly before noon on the same day Lieutenant Kiernan and Detective Vogt of the Fairbanks Police Department attempted to serve the bench warrant on Whitton at his room at the Tamarac Inn Motel. The officers' efforts to locate Whitton at that time were unsuccessful.

On the 21st of December Investigator Hopper of the Alaska State Police was officer in charge of the metro unit, a special detail concerned with traffic in narcotics and dangerous drugs. When Hopper reported for duty at approximately 3:00 p. m. on the 21st, he was advised by Captain Gibson of the Fairbanks Police Department that an informer had revealed that Whitton and one Jimmy Daniels, a/k/a Danny Keyes, planned to engage in a heroin transaction later that evening. Investigator Hopper was notified by the warrant officer for the state police of the outstanding bench warrant for Whitton's arrest.

At Hopper's request the arrest warrant was delivered to his possession and control. Hopper and Detective Morris proceeded to the vicinity of the Tamarac Inn and established surveillance for the stated purpose of serving the warrant on Whitton. The warrant was not served at that time.

At 5:15 p. m. Jimmy Daniels arrived at the Tamarac in a vehicle and began unloading cartons or boxes. In light of this development Investigator Hopper directed Investigator Lewis and Detective Bonneville, who were in separate vehicles, to report to him to assist in the surveillance. At approximately 5:30 p. m. Daniels and a white male believed to be Whitton came out of the Tamarac Inn, entered Daniels' vehicle, and drove away. The trial court found that the officers were unable to make a positive identification of Whitton as the white male at this point.

Failing to observe Whitton but identifying Daniels, Hopper testified that his interest shifted from serving the bench warrant to investigating the suspected narcotics transaction involving Daniels. The four officers using three vehicles established surveillance of the Daniels vehicle as it drove off until it stopped at a residence on Baranof Street. There Daniels and his companion, whose identity remained unknown, were joined by several persons in a blue Buick. The Buick was subsequently identified as belonging to Steve Monzma, suspected dealer in heroin and cocaine. Surveillance of both vehicles was maintained briefly thereafter until contact was lost.

A short time later, Investigator Hopper and Detective Morris were able to locate the Daniels vehicle at the residence of Nadine Scott, who was also suspected of involvement in heroin traffic. As the Daniels vehicle departed the Scott residence, it passed within several feet of the officers' car. For the first time Investigator Hopper was able to make a positive identification of Whitton. Hopper contacted the other officers on surveillance and proceeded to stop the Daniels vehicle and arrest Whitton on the bench warrant. Whitton was patted down at the scene of the arrest. Neither Daniels nor the vehicle was

searched at that time. Whitton was transported to the jail by Investigator Hopper and Detective Morris. As Hopper was filling out the booking sheet at the jail, Whitton broke and ran through a sliding door, shoving the door shut behind him. A correctional officer opened the door and the officers pursued Whitton down a hallway where he was observed entering a small room. As Investigator Hopper entered the room, he observed Whitton was wearing a glove on his left hand, in which was clutched the right hand glove. In Whitton's right hand was a small toy rubber balloon. He was told to drop the glove and the balloon. The right glove contained four toy balloons in the finger holes. The substance in the balloons was field tested and the tests revealed the presence of heroin.

The case of Taglavore v. United States, 291 F.2d 262 (9th Cir. 1961), was called to the attention of the trial judge and is relied upon in this appeal. In that case an inspector for the Alaska territorial police suspected that Taglavore was involved in traffic in narcotics. He directed his officers to arrest Taglavore on a warrant for two minor traffic violations. The arrest warrant was sworn out by the inspector a day after he claimed to have observed Taglavore commit the violations. The inspector testified that he had not stopped Taglavore or issued a traffic citation because he was "busy doing other police work." When the inspector turned the warrant over to his subordinate officers, he directed them to go out at once and find Taglavore because there was an excellent chance that he would have marijuana cigarettes in his possession at that time. Taglavore was subsequently arrested on the warrant and subjected to a brutal body search which produced marijuana.

The court in *Taglavore* found that the traffic warrant was used merely as an excuse to search Taglavore for the marijuana cigarettes. The police behavior was characterized as "a deliberate, pre-planned attempt . . . to violate a suspect's constitutional rights by engaging in a subterfuge." 291 F.2d at 267. Both the arrest and search were held to be in violation of Taglavore's constitutional rights.

■ The trial judge found the facts of the *Taglavore* case to be far removed from the case at bar, and we agree. In the case before us the arrest warrant was not ordered out by the officers as a pretext to conduct a search as in *Taglavore,* but was issued by a judge following Whitton's non-appearance in court. The narcotics officers had no part in causing the warrant to issue and obtained it through established police procedures. Nor is there anything in the record before us to indicate that the police obtained the bench warrant for Whitton's arrest in order to use it improperly. Unlike Taglavore, Whitton was not subjected to any more than a pat down for weapons at the time of his arrest. Moreover, the warrant was not employed to gain entry to Whitton's room at the Tamarac Inn or to any other residence to conduct an otherwise unauthorized search.[1] The vehicle in which Whitton was a passenger at the time of his arrest was not the subject of a search.[2]

■ Any "timing" in the execution of the warrant was reasonable. The narcotics officers did not attempt to enter the Tamarac Inn and serve the warrant at the outset of the surveillance because they were apprehensive that Whitton was armed. It was not necessary for the officers to forego their narcotics investigation, immediately enter the Tamarac Inn, and, as the trial judge put it, "blow the whole thing." The record indicates no prejudice to the appellant from any delay in execution which may have occurred.[3]

1. *See* McKnight v. United States, 87 U.S. App.D.C. 151, 183 F.2d 977 (1950). Subsequently the police did search the Nadine Scott residence but only after obtaining a search warrant.

2. *See* Amador-Gonzales v. United States, 391 F.2d 308 (5th Cir. 1968).

3. *See* United States v. Leon, 460 F.2d 299 (9th Cir. 1972); United States v. Payne,

■ Nor does the record evidence an improper search at the station house. There is nothing exceptional that we can see from the booking procedures which were employed. Bail was endorsed on the warrant; possibly Whitton would have been able to post bail and avoid a search altogether. When he broke and ran, it was apparently an attempt on his part to somehow dispose of or conceal the heroin which was then in his possession. The evidence which Whitton sought to suppress and which he now claims was improperly admitted at trial came to the attention of the officers as a result of Whitton's efforts to conceal or dispose of it. The circumstances which led Whitton to reveal the heroin show none of the coercion and tainted police behavior present in *Taglavore*. The evidence was properly admissible.

Whitton was sentenced to 10 years' imprisonment, the maximum penalty under the statute. He claims that the penalty imposed is excessive because a maximum sentence may be imposed only upon the worst type of offender. He further asserts that the sentencing judge improperly considered a "rap sheet" and mere police contacts in the sentencing.

■ The disposition of Whitton's claims is governed by firmly established precedent of this court. The proposition that maximum sentences should ordinarily be reserved for the "worst offender" is stated in Waters v. State, 483 P.2d 199,

201 (Alaska 1971). This general rule, however, does not preclude the sentencing judge from considering a variety of factors which can make a defendant a "particularly difficult type of offender." Tarnef v. State, 492 P.2d 109, 118 (Alaska 1971). Here the sentencing judge was concerned with Whitton's long history of offenses including at least 14 prior convictions.[4] The judge took cognizance of the conclusion in the pre-sentence report that Whitton was not a likely candidate for rehabilitation. He was convinced by the record that past lenient treatment of Whitton had failed to bring about his rehabilitation. Under the standard set forth in *Tarnef* and in State v. Chaney, 477 P.2d 441, 444 (Alaska 1970), we cannot say that the sentence is clearly mistaken.[5]

■ Appellant's contention that the sentencing judge erred in relying on "police contacts" is also without merit. We have in the past cautioned sentencing judges to be wary of relying on evidence of police contacts which are unsupported by explanations of the outcome of such contacts. *Waters*, 483 P.2d at 203. The sentencing judge in this case was aware of the results of the offenses listed on the "rap sheet." *See* Lemon v. State, 522 P.2d 160, 163–64 (Alaska 1974).

We affirm the conviction and sentence.[6]

CONNOR, J., not participating.

423 F.2d 1125 (4th Cir. 1970); United States v. Tillery, 332 F.Supp. 217 (E.D.Pa.1971).

4. Whitton's record of convictions includes assault and battery, theft, malicious destruction, joy riding, disorderly conduct, and reckless driving.

5. McClain v. State, 519 P.2d 811 (Alaska 1974).

6. *See* McKenzie v. State, 520 P.2d 791 (Alaska 1974); Crow v. State, 517 P.2d 756 (Alaska 1973); Kriska v. State, 501 P.2d 159 (Alaska 1972); Griggs v. State, 494 P.2d 795 (Alaska 1972).