978 F.2d 716
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Serge BRATO, Defendant-Appellant.
 No. 91-50361.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 9, 1992.
Decided Nov. 3, 1992.
 
 Before FLETCHER, O'SCANNLAIN and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Serge Brato was convicted of possessing a sawed-off shotgun in violation of 26 U.S.C. § 5861(d), and of possessing a firearm with an obliterated serial number in violation of 26 U.S.C. § 5861(h). We affirm.
 
 
 3
 I. Facts.
 
 
 4
 In November of 1990, the Los Angeles police were informed that an individual named Serge was selling marijuana from his business, Road and Track. They began watching Brato, and saw him do things indicative of drug dealing. For instance, he helped a known drug dealer, who was driving in a counter-surveillance manner, deliver something contained in an athletic bag. They also saw Brato show an assault rifle with a scope and a silencer to someone at Road and Track. Michael Dawkins, an agent with the Bureau of Alcohol, Tobacco and Firearms, was then brought into the investigation. The police got a warrant authorizing them to search Road and Track, including "any vehicles parked directly on the property or in the street in front of or adjacent to" the property, "provided that said vehicles can be specifically connected to an occupant or permanent resident of each location to be searched prior to searching said vehicle or vehicles." The warrant also authorized a search of Brato's person.
 
 
 5
 On November 17, 1990, after Road and Track had closed and most of the employees had departed, the officers heard power tools and saw sparks inside the building. Brato then left the building and began to drive away. He was stopped about a mile away by Dawkins and a Los Angeles police officer, who searched Brato's person and his car. They found a pistol in the vehicle. Brato was arrested for possession of a concealed weapon and taken to a police station.
 
 
 6
 Following a brief period of confinement at the station, Brato was taken to a hotel a short distance from Road and Track. He produced the keys to the building and instructed the officers as to how to disarm the alarm. The officers searched the premises, and found some marijuana and two unregistered sawed-off shotguns, the serial number on one of which had been obliterated. The officers also found the barrel of one of the guns and the tool used to cut it. They then took Brato to Road and Track and warned him of his Miranda rights. Brato first denied, but then acknowledged, that he owned the guns.
 
 
 7
 Brato was indicted on two counts of possession of a sawed-off shotgun and one count of possession of a firearm with an obliterated serial number. Brato moved to suppress his incriminating statements, but the district court denied the motion. He was convicted on all three counts, and timely appealed.
 
 
 8
 II. Brato's Confession was Admissible.
 
 
 9
 Brato argues that the statements he made at Road and Track should have been suppressed, because he was illegally arrested for possession of the pistol found in the passenger compartment. First, he argues that the warrant either did not authorize the search of his vehicle off the premises of Road and Track, or, if it did, was lacking in the requisite particularity. Thus, he says, the search that produced the concealed weapon was illegal, and this illegality tainted his later confession. Second, he argues that even if the search was proper, his arrest was not, because it was merely a pretext for transporting him to Road and Track in order to elicit incriminating statements from him.
 
 
 10
 We review de novo whether the police exceeded the scope of a warrant, United States v. McLaughlin, 851 F.2d 283, 286 (9th Cir.1988), whether the warrant was sufficiently specific, Center Art Galleries-Hawaii, Inc. v. United States, 875 F.2d 747, 749 (9th Cir.1989), whether a protective search of the vehicle was proper, United States v. Thomas, 863 F.2d 622, 625 (9th Cir.1988), and whether an arrest was pretextual. United States v. Lillard, 929 F.2d 500, 502 (9th Cir.1991).
 
 
 11
 A. The Search of Brato's Car was Legal.
 
 
 12
 The warrant authorized a search of "[a]ny vehicles parked directly on the property or in the street in front of or adjacent to" the property, "provided that said vehicles can be specifically connected to an occupant or permanent resident of each location to be searched prior to searching said vehicle or location." Brato argues that the warrant was overbroad. Also, at the time the search of Brato's vehicle was executed, it was no longer parked on or near Road and Track.
 
 
 13
 Nevertheless, the officers properly searched Brato's car and arrested him for possession of the pistol. They had a warrant that authorized a search of Brato's person. They stopped his car in order to execute this warrant. The stop was therefore proper, because it was incidental to the execution of the warrant to search Brato's person. United States v. O'Connor, 658 F.2d 688, 691 (9th Cir.1981).
 
 
 14
 We need not decide whether Brato was arrested, see United States v. Slupe, 692 F.2d 1183, 1189 (8th Cir.1982), or merely detained, when he was stopped. The search that produced the pistol was valid in either case. If Brato was arrested in the course of executing the search warrant, then a search of the entire passenger compartment of the car was valid. New York v. Belton, 453 U.S. 454, 460 (1981). If Brato was detained, then the officers could conduct a warrantless search of those areas of the passenger compartment of the car in which a weapon could be placed or hidden if they possessed "a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed]" a belief that Brato was dangerous and could gain immediate control of weapons. Michigan v. Long, 463 U.S. 1032, 1049 (internal quotation omitted) (1983). The district court determined that there were specific articulable facts justifying a "proper concern for safety." This conclusion is fully supported by the fact that the officers had previously observed Brato show an assault rifle to some people at Road and Track, and by the fact that he was under investigation for drug offenses. United States v. Salas, 879 F.2d 530, 535 (9th Cir.), cert. denied, 493 U.S. 979 (1989) (holding that a pat-down search of a suspected drug-trafficker was permissible because "[i]t is not unreasonable to assume that a dealer in narcotics might be armed."). The search of the vehicle that produced the pistol was valid, and the resulting arrest of Brato for possession of a concealed weapon was supported by probable cause. His later inculpatory statements were not tainted by an illegal arrest.
 
 
 15
 B. The Arrest was not Pretextual.
 
 
 16
 Brato argues that even if the officers had probable cause to arrest him for possession of a concealed weapon, their real purpose in doing so was to provide a pretext for taking him to Road and Track and eliciting incriminating statements from him. A warrantless search incident to an arrest that is merely a pretext for the instigation of the search is not reasonable within the meaning of the Fourth Amendment. Taglavore v. United States, 291 F.2d 262, 265 (9th Cir.1961). Whether an arrest is pretextual turns on the motivation or primary purpose of the arresting officers. United States v. Smith, 802 F.2d 1119, 1124 (9th Cir.1986).
 
 
 17
 Brato was carrying a concealed weapon, and was a convicted felon. His arrest was therefore, on its face, a proper response to the discovery of the loaded pistol. Cal.Penal Code § 12025(a) (1992). Dawkins, one of the officers who searched the car and arrested Brato, said that Brato was arrested for possession of the pistol. After his arrest, he was taken to a police station, but was apparently not booked on the possession charge. He was held there for a brief period, and was then taken to a hotel a short distance from Road and Track. The officers persuaded him to give them the keys and tell them how to deactivate the alarm system, and he was held there until the guns were found. There is nothing here to suggest that the arrest was pretextual. Compare Taglavore, 291 F.2d at 264-65 (defendant arrested on a warrant sworn out by a narcotics officer for minor traffic violations he had witnessed the night before; arresting officers testified that it was not ordinary procedure to arrest persons for minor traffic violations, and that the purpose of the arrest was to search the defendant for drugs).
 
 
 18
 III. Evidentiary Rulings.
 
 
 19
 We review the district court's evidentiary rulings for abuse of discretion, United States v. McClintock, 748 F.2d 1278, 1291 (9th Cir.1984), cert. denied, 474 U.S. 822 (1985), and its construction of the Federal Rules of Evidence de novo. Id. at 1287.
 
 
 20
 A. Testimony Regarding the Warrant was Properly Admitted.
 
 
 21
 Brato argues that the district court erroneously allowed the police to testify that they had a warrant when they searched Road and Track. He contends that this fact was irrelevant, because he did not challenge the propriety of the search.
 
 
 22
 The fact that the police had a warrant when they searched Road and Track is not strictly relevant, because it does not tend to make the existence of any fact at issue any more or less probable. However, this is background information, which is admissible unless it runs afoul of Rule 403. Fed.R.Evid. 401 advisory committee's note. This evidence is not cumulative, does not unfairly prejudice Brato, and does not create a risk of jury confusion. Brato's argument that the admission of this testimony prejudiced him because it implied that the police had information linking him to illegal activities is speculative. The testimony was properly admitted.
 
 
 23
 B. Sadghi's Testimony was Properly Excluded.
 
 
 24
 Brato argues that the district court erroneously excluded the testimony of one of his witnesses. Afshin Sadghi testified that he accompanied a person named Jesus into Road and Track in late August or early September of 1990. Jesus brought with him a bag that was heavy and looked like it was intended to carry guns, and placed it on the counter. He then had a discussion with Eddie Martinez, one of Road and Track's managers. Martinez gave Jesus some money and carried the bag toward the mechanic's shop. Brato proffered testimony by Sadghi that he heard the words "sawed-off shotgun" used during the conversation between Martinez and Jesus. The district court refused to allow the testimony on the ground that it was inadmissible hearsay.
 
 
 25
 The proffered statement was inadmissible because it was irrelevant. The mere fact that Sadghi overheard someone say "sawed-off shotgun" does not support a reasonable inference that one of the guns recovered by the police at Road and Track some two-and-a-half months later was not Brato's. The chain of inferences necessary to make this jump is too tenuous. We therefore need not decide whether the proffered statement was hearsay.
 
 
 26
 IV. Brato's Proposed Voir Dire Question was Properly Rejected.
 
 
 27
 Brato argues that the district court abused its discretion in refusing to give one of his proposed voir dire questions. Brato submitted to the district court a proposed question reading: "If a law enforcement officer were to testify in this case, would any of you be inclined to think that his/her testimony was more believable than that of any other witness just because of the fact that he/she is a law enforcement officer?" The district court asked a comparable question of those jurors who indicated that close friends or relatives of theirs were law enforcement officers, but refused Brato's request to ask it of everyone. We review the district court's refusal to give a proposed voir dire question for abuse of discretion. United States v. Powell, 932 F.2d 1337, 1340 (9th Cir.), cert. denied, 112 S.Ct. 256 (1991).
 
 
 28
 Under some circumstances, it is reversible error for the district court to refuse to ask the members of the venire whether they would be unduly influenced by the testimony of police officers. In United States v. Contreras-Castro, 825 F.2d 185 (9th Cir.1987), we reversed the defendant's conviction because the district court refused to ask the venire members whether they would favor the testimony of law enforcement officers over the defendant's testimony. We held that the critical factors are (1) the importance of the government agent's testimony to the case as a whole, (2) the extent to which the question concerning the venireperson's attitude toward government agents is covered in other questions on voir dire and on the charge to the jury, (3) the extent to which the credibility of the government agent is put into issue, and (4) the extent to which the testimony of the government agent is corroborated by non-agent witnesses. Id. at 187. We reversed the conviction because the government's entire case rested on the testimony of government agents, only one agent's testimony bore on the issue of whether the defendant knew that the contraband at issue was drugs, the defendant's testimony controverted that of the agent, and there were no non-agent witnesses for the government. Id. Conversely, in Powell, we decided that a generalized inquiry into impartiality and an instruction requiring the jury to use the same standard for judging the credibility of all the witnesses was sufficient, where the agents' testimony was bolstered by physical evidence and the testimony of others, even though some of the testimony was controverted by the defendant. Powell, 932 F.2d at 1340-41.
 
 
 29
 This case is more like Powell than like Contreras-Castro. Brato did challenge the officers' credibility. The officers testified that both of the guns were found in the office at Road and Track, one in a drawer in the desk and the other lying against a wall behind the desk. Brato's defense was that the officers lied about finding the guns in the office. This mattered because Brato and his father were apparently the only people who had access to the office. Brato attempted to discredit the officers' testimony by pointing out certain alleged inconsistencies between the testimony of the various officers. Brato's father also testified that none of the guns could have been found in the desk.
 
 
 30
 However, there is substantial corroborating evidence. First, Brato admitted to the police that the weapons were his, and that he had instructed one of his employees to saw off the barrel of one of them. In addition, a power drill and one of the severed barrels were recovered and entered into evidence. Also, the district court asked the two members of the venire who had some connection with law enforcement officers whether they would be able to judge an officer's testimony by the same standard they would apply to anyone else's, and carefully instructed the jury as to the factors it could consider in judging the credibility of testimony.
 
 
 31
 Thus, the officers' testimony was important to a material issue, and it was controverted by the defense. On the other hand, there was substantial corroborating evidence of Brato's guilt--including Brato's confession--and the judge's voir dire questions and jury instructions made it clear that the jurors should not consider the officers more credible merely because they were officers. We hold that the district court did not abuse its discretion in denying Brato's proposed voir dire.
 
 
 32
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3