21 F.3d 1118
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rolena Ann SANDERS, Defendant-Appellant.
 No. 93-10473.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 23, 1994.*
Decided March 30, 1994.
 
 Before: FLETCHER, BRUNETTI, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Rolena Ann Sanders appeals her conviction for bank robbery, in violation of 18 U.S.C. Secs. 2, 2113(a). Sanders contends that the district court erred by denying her motion to suppress evidence discovered during a search conducted after she was arrested for hitchhiking. We have jurisdiction under 28 U.S.C. Sec. 1291, and we reverse and remand.
 
 
 3
 * Facts
 
 
 4
 On August 20, 1992, at 1:30 p.m., a robbery occurred at the Security Pacific Bank on Virginia Street in Reno, Nevada. The victim teller described the robber as a woman with sandy blond hair, who was approximately 5'3"-5'4" and had a medium build, and was wearing a white shirt and a black sweater and skirt. The woman handed the teller a note which read: "Hold up. Give me all your money." The teller relinquished $1,653, including four bills with prerecorded serial numbers and a "bait pack" comprising an electronic tracking device hidden in the middle of fifty one-dollar bills.
 
 
 5
 Shortly after the robbery occurred, Deputy Sheriff Feroah saw Sanders walking on Interstate 80, approximately a quarter of a mile away from the Security Pacific Bank. Feroah detained Sanders on the side of the freeway at 1:49 p.m. and began to question her. While they were talking, Trooper Smith drove up and told Feroah that he too had seen Sanders walking on the freeway. Several Reno police officers then arrived at the scene. Trooper Smith told one of the officers that he had seen Sanders extend her arm and thumb in an attempt to hitchhike. Smith left the scene shortly thereafter and did not participate in the ensuing investigation of the bank robbery.
 
 
 6
 The teller who had been robbed was then brought to the freeway to view Sanders. The teller, however, stated that she was positive that Sanders was not the robber. Nevertheless, the officers continued to detain Sanders and began searching the area between the bank and the freeway entrance. One officer discovered a woman's black jacket and a blouse under a bush; another found the $50 "bait pack" lying on the freeway guardrail. At some point between 2:50 p.m. and 4:00 p.m., Sanders was transported to the Reno Police Department. Although she had been detained on the freeway for over an hour, Sanders had not yet been arrested.
 
 
 7
 Approximately 1 1/2 hours after Trooper Smith had left the scene, a detective from the Reno Police Department called and asked him to report to the police station to sign a complaint charging Sanders with hitchhiking, a misdemeanor under Nevada state law. Smith testified that the reason he was asked to sign the hitchhiking complaint was that "[a]t that point in time there was still some suspicions that [Sanders] w[as] involved with a crime that occurred on that date in the area of the Interstate 80 and the Virginia Street tunnel." When asked why Sanders had not been arrested for that other crime, Smith responded: "That was not up to me." Smith further testified that he did not arrest all hitchhikers, and that generally he would arrest a person for hitchhiking only if he or she were intoxicated or had an outstanding warrant. Smith admitted that neither of these criteria applied to Sanders.
 
 
 8
 After she had been arrested for hitchhiking, Sanders was taken to jail and was subjected to a standard booking search. The search revealed $1603 hidden in Sanders's bra; the money included the bait bills stolen from the Security Pacific Bank.
 
 II
 Discussion
 
 9
 Sanders contends that her arrest for hitchhiking was a pretext to enable the police to search her for evidence of the bank robbery and, therefore, the evidence obtained by the search should have been suppressed. We agree.
 
 
 10
 We must first address the government's contention that we should not review this issue because Sanders did not properly raise it below. Although Sanders did not raise the pretextual arrest issue in her motion to suppress, her attorney brought it to the district judge's attention during a pretrial conference on January 21, 1993. In particular, defense counsel referred to this court's decision in United States v. Mota, 982 F.2d 1384 (9th Cir.1993), which discussed the issue of pretextual arrests; counsel also requested a hearing on the suppression motion. On February 2, 1993, the district judge informed the parties that he was considering the Mota opinion, and that it had "the prospects [sic] of providing a possible dismissal of the action." Nevertheless, on February 3rd, the district court issued a minute order denying the suppression motion; the order did not refer to Mota.
 
 
 11
 After the jury had returned its verdict, however, the district court stated that it wanted "to put on the record a concern that I had in regard to this case." The district court referred to the Mota decision and the question of a pretextual arrest, but distinguished this case from Mota because hitchhiking was a misdemeanor, and therefore a ground for arrest, under Nevada state law. The district judge concluded his comments with the statement: "I wanted to put that on the record to make sure before this case goes to some other court the judges there will know that we were mindful of this case and had considered it."
 
 
 12
 These statements demonstrate that the district court considered the pretextual arrest issue; we therefore conclude that Sanders adequately preserved the issue for appellate review. Moreover, "the factual record is sufficient to enable us to apply settled principles of fourth amendment law to determine the propriety of the [search.]" See United States v. Licata, 761 F.2d 537, 543 (9th Cir.1985) (reviewing Fourth Amendment claim that had not been considered by the district court).
 
 
 13
 We review de novo the lawfulness of searches and seizures. United States v. Huffhines, 967 F.2d 314, 316 (9th Cir.1992) (citation omitted). "An arrest may not be used as a pretext to search for evidence." United States v. Lefkowitz, 285 U.S. 452, 467 (1932); Williams v. United States, 418 F.2d 159, 161 (9th Cir.1969), aff'd, 401 U.S. 646 (1971). "Where the arrest is only a sham or a front being used as an excuse for making a search, the arrest itself and the ensuing search are illegal." Taglavore v. United States, 291 F.2d 262, 265 (9th Cir.1961)).
 
 
 14
 A search is pretextual when "the motivation or primary purpose of the arresting officers" is to arrest a defendant "for a minor offense so as to allow police to search for evidence of some other unrelated offense for which the police lack probable cause to arrest or search."
 
 
 15
 Mota, 982 F.2d at 1386 (quoting United States v. Smith, 802 F.2d 1119, 1124 (9th Cir.1986)). The validity of the arrest, however, depends on the objective facts and circumstances, not on the arresting officer's subjective intent. United States v. Cannon, No. 92-10266, slip op. 1281, 1287-90 (9th Cir. Feb. 4, 1994). We must inquire "whether a reasonable officer 'would have' made the [arrest] anyway, apart from his suspicions about other more serious criminal activity." Id. at 1290 (citing United States v. Bowhay, 992 F.2d 229, 231 (9th Cir.1993); United States v. Lillard, 929 F.2d 500, 502 (9th Cir.1991)); see also Taglavore, 291 F.2d at 265 (finding the defendant's arrest a pretext because of the officers' failure to follow "ordinary procedure" and the timing of the arrest).
 
 
 16
 Here, the facts and circumstances of Sanders's arrest for hitchhiking demonstrate that the arrest was a pretext for the search. First, Trooper Smith's testimony establishes that it was not ordinary procedure to arrest for hitchhiking a person who, like Sanders, was not intoxicated and had no outstanding warrants. In fact, Smith did not arrest Sanders when he saw her attempt to hitchhike; he signed the hitchhiking complaint nearly two hours later because the officers investigating the bank robbery requested that he do so. Moreover, during the period before her arrest, the police had discovered the bank robber's clothing and the stolen electronic tracking device near the freeway. The fact that the police arrested Sanders after these items were found indicates that they suspected that she had been involved in the robbery, despite the teller's protestations to the contrary. Indeed, Smith testified that the Reno police asked him to sign the hitchhiking complaint because they suspected that Sanders had been involved in another crime.
 
 
 17
 Thus, both the procedure and timing of Sanders's arrest demonstrate that the officers would not have arrested her for hitchhiking had she not been suspected of bank robbery. See Cannon, No. 92-10266, slip op. at 1290; Taglavore, 291 F.2d at 265. Accordingly, we conclude that Sanders's arrest for hitchhiking was a pretext to allow the police to search for evidence of the bank robbery. See id. The search therefore was illegal, and the evidence seized from Sanders should have been suppressed. See Lefkowitz, 285 U.S. at 467; Taglavore, 291 F.2d at 266 ("[w]ere the use of misdemeanor arrest warrants as a pretext for searching people suspected of felonies to be permitted, a mockery could be made of the Fourth Amendment and its guarantees").
 
 
 18
 We reverse Sanders's conviction and remand the case for proceedings consistent with this memorandum.
 
 
 19
 REVERSED AND REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3