**Mitchell Thomas BLAZAK, Petitioner,**

**v.**

**Frank A. EYMAN, Superintendent, Arizona State Prison at Florence, Respondent.**

**Civ. No. 71–125 Phx.**

United States District Court,
D. Arizona.
Sept. 21, 1971.

Marshall A. Lehman, Post-Conviction Legal Assistance Clinic, Tucson, Ariz., for petitioner.

Gary K. Nelson, Atty. Gen., Albert M. Coury, Asst. Atty. Gen., Phoenix, Ariz., for respondent.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

Petitioner has filed herein a petition for writ of habeas corpus. Pursuant to an order of this Court, respondent has filed a response together with a complete record of petitioner's trial and the hearings held in connection therewith. Petitioner has also filed a reply to the response.

Petitioner alleges two procedural infirmities of constitutional dimension. They are: (1) that his arrest without a warrant for a traffic violation was a pretext for a search for marihuana which the police merely suspected he might have in his possession; and (2) that he was deprived of his right to counsel at trial inasmuch as he did not competently and intelligently waive that right. Petitioner has exhausted his state remedies as to both issues. State v. Blazak, 105 Ariz. 570, 468 P.2d 929 (1970).

Officer John A. Bright of the Intelligence Unit (now called the Narcotics Control Detail of the Tucson Police Department) testified that on the evening of January 17, 1967, he received a telephone call from Randy Lowry, informing him that petitioner, Mitchell Blazak, was at a gas station on North Oracle Road in Tucson where he, Randy Lowry, was working and that petitioner was smoking marihuana. The State has not contended that the officer knew him to be a reliable informant or that officers were able to verify the informant's tip that petitioner was smoking marihuana. Officer Bright testified he had previous information that Mitchell Blazak's driver's license had been revoked.

Officer Bright also testified that before leaving the police station he requested a teletype message be sent to the License Division of the Motor Vehicle Department in Phoenix, regarding the status of petitioner's driver's license, and that he later received an answer stating that petitioner's driver's license had been suspended. Officer Bright then proceeded by himself in an unmarked police car to the gas station on Oracle Road. Officers Wolff and Grant, in another automobile, followed Officer Bright to the gas station.

In the area of the gas station, Officer Bright passed the station once and looped back, passing it slowly again. He observed the petitioner in the gas station, but did not see him smoking. Officer Bright parked a few hundred feet north of the gas station on Oracle.

Later, Officer Bright stopped an automobile shortly after it left the gas station. It was driven by petitioner and contained a passenger, Randy Lowry. Officer Bright asked petitioner for his driver's license. Upon finding that petitioner did not have a license in his possession, Officer Bright placed the petitioner under arrest for driving with a suspended license. With the other two officers present, Officer Bright proceeded to "pat down" or "frisk" petitioner. A hard object was felt in the pocket of petitioner's jacket and was removed. It

was a tobacco tin. On opening it, the officers identified its contents as marihuana. Petitioner was then placed under arrest and booked for illegal possession of marihuana. Petitioner was never charged with a traffic violation.

The State's position is simple. They argue since Officer Bright knew petitioner had a suspended driver's license, he had a right to arrest petitioner pursuant to A.R.S. § 28–473 and, that once arrested, had a right to search him for weapons. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). They submit since Officer Bright found a tobacco tin containing marihuana during the course of his "pat down", admission of such evidence at trial was not unconstitutional under Chimel v. California, *supra*.

■■ The State's argument is supported by ample law but it fails to respond to petitioner's claim that his arrest on a traffic violation was a pretext which allowed the officers to search for narcotics they believed he had in his possession at the time. It is well settled that the Fourth Amendment requires the Court to examine the facts and circumstances surrounding a search and seizure in order to determine its legality. United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); United States v. Harris, 321 F.2d 739 (6th Cir. 1963); Amador-Gonzalez v. United States, 391 F.2d 308 (5th Cir. 1968); Taglavore v. United States, 291 F.2d 262 (9th Cir. 1961); Gilbert v. United States, 291 F.2d 586 (9th Cir. 1961). When an arrest is made solely for the purpose of discovering evidence to support another charge, such arrest is a sham and illegal and any evidence obtained as a result must be suppressed. *Id.*, Worthington v. United States, 166 F.2d 557 (6th Cir. 1948); Henderson v. United States, 12 F.2d 528 (4th Cir. 1926).

The Government in Taglavore v. United States, *supra*, took a position similar to that of the respondent in this case, i. e., evidence obtained from a search incident to a valid arrest is admissible. In that case, the Court found a search and seizure illegal and the evidence gained from it inadmissible when the police used a warrant for a minor traffic violation as a pretext to arrest the defendant so they would be able to search for narcotics they believed to be in his possession. The combination of circumstances —the unusual procedure of arresting an individual for a minor traffic violation, the fact that the arresting officers were members of the vice squad and were given instructions to make the arrest at a time when the inspector stated he believed the defendant might have marihuana in his possession and the delay in execution of the warrant for the previous day's traffic offense—made it obvious to the court that the arrest of the defendant was solely for the purpose of obtaining evidence which could later be used against the defendant in a narcotic charge. The court held that the police had "engaged in a deliberate scheme to evade the requirements of the Fourth Amendment by using a traffic arrest warrant to search appellant for narcotics they suspected he had on his person." 291 F.2d 262, at 267.

This Court finds it hard to distinguish the facts of the *Taglavore* case from those of the case at bar. Here, the officers engaged in the same unusual procedure of arresting the defendant for a traffic violation. As in *Taglavore*, policemen from the unit in charge of narcotic violations were dispatched for the admitted purpose of apprehending petitioner on a narcotics violation. Officer Bright testified he knew before the date of arrest that petitioner's license had been suspended. He waited, as did the officers in *Taglavore*, for a time when he suspected the petitioner to have narcotics in his possession before making the arrest.

In *Amador-Gonzalez, supra*, the defendant was suspected of transporting narcotics. While under surveillance Gonzalez was seen speeding and making several illegal turns. All violations took place over a period of an hour. The court held, for many of the same reasons

as did the court in *Taglavore*, that the evidence clearly demonstrated the arrest of Gonzalez on the minor violations was a pretext to enable the arresting officer to search Gonzalez and his car.

Most states give officers the right to arrest drivers for traffic violations committed in their presence. But both courts in *Taglavore* and *Gonzalez* indicated that when no citation was issued by the arresting officers and the defendant was not prosecuted for the traffic violation, the officers' intent to bypass Fourth Amendment protection was manifest. Officer Bright testified that no citation was issued to Blazak and that he was not prosecuted for driving on a suspended license.

According to Officer Bright's testimony, he knew, prior to the date of arrest, that the petitioner's driver's license had been suspended and apparently only called the Motor Vehicle Division in Phoenix to verify this fact before he left for the service station where it was reported petitioner was smoking marihuana. The record clearly shows the officers went to the service station for the sole purpose of apprehending a suspected narcotics violator and at no time does the record show that the officers from the Intelligence Unit abandoned their original objective. In fact, the officers' unusual arrest procedure manifests a continuity of intent.

All of the above facts conclusively show that Mitchell Blazak was a victim of a pretextual arrest carried out for the purpose of circumventing his Fourth Amendment rights. The evidence obtained as a result therefrom should have been suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

This Court having determined that the introduction of marihuana seized from petitioner's person on the night of his arrest was illegally obtained, petitioner's contention that he was deprived of his right to counsel need not be considered. Accordingly,

It is ordered that unless respondent shall afford petitioner a new trial without use of the illegally seized evidence within sixty (60) days, the relief prayed for will, on request of petitioner, be granted.

It is further ordered that the above order is stayed for a period of thirty (30) days to afford respondent the opportunity to appeal from the order of this Court.