**UNITED STATES of America, Plaintiff,**

v.

**Thomas KELLER, Defendant.**

**No. 80 CR 194.**

United States District Court,
N. D. Illinois, E. D.

Oct. 21, 1980.

James Schweitzer, Asst. U. S. Atty., Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for plaintiff.

Carol Brook, Kathy M. Morris, Federal Defender Program, Chicago, Ill., for defendant.

MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

Defendant, Thomas Keller, has been indicted for violation of 18 U.S.C. §§ 1341 and 1708 for the theft and fraudulent use of certain credit cards. The matter is now before the Court on Keller's motion to suppress evidence.

Chicago Police Officer Kukulka is a Special Operations Group Officer whose primary responsibility involves back–up investigation of non- traffic related crimes. On the morning of April 30, 1978, Officer Kukulka was on duty with a partner in a "high crime" district. He noticed a car in violation of a city ordinance because it had only one license plate. The car was pulled over and Thomas Keller, the driver and sole occupant, was asked to get out and present his driver's license. Keller stepped from the car, but he was unable to produce his driver's license because he had posted it in lieu of bail on a prior traffic citation. He presented that citation to Kukulka. The officer explained, however, that Keller would have to go to the police station on the new traffic offense because a prior traffic citation is not acceptable as bond. The officer then searched Keller and found several credit cards and a social security card bearing names other than Keller's. Keller told Kukulka the cards belonged to a friend,

---

**12.** See Part I *supra*; *Pyramid Lake v. Morton*, 354 F.Supp. 252 (D.D.C.1973).

but upon further questioning Keller became evasive.

The officer testified that the search was a protective search and not a full custody search. He didn't remember where he found the cards, but testified that he looked into the wallet to see if the defendant had a gun concealed there. One could treat this testimony as facetious or a deliberate misrepresentation. I choose the latter. Kukulka then told Keller he was under arrest and *Miranda* rights were read. The car was searched and Keller was taken to the police station where he was issued two traffic tickets for failing to produce a driver's license and failing to display two license plates. It was also then learned that the credit cards had been stolen.

At the suppression hearing, Officer Kukulka testified that it is normal procedure to stop a person driving a car displaying only one license plate and to take drivers to the police station when they are unable to produce a valid driver's license. However, Kukulka also quite candidly testified that he stopped Keller on the technical traffic violation only because he hoped to recover evidence of a more serious crime, since "many times a traffic violation does lead to bigger things." (Tr. 10, 18–21).

In his motion, Keller argues that all evidence derived from the warrantless search of his person should be suppressed for two reasons. First, he claims that his initial stop by the police was invalid because it was purely a pretext to search for other evidence. Second, even if the stop was valid, the police did not have probable cause to make a full custodial arrest until after Keller was searched. Thus, the search was not authorized by *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), as incident to a custodial arrest and further, the search exceeded the permissible scope of a *Terry* pat–down.

The government has responded that once Keller failed to produce a driver's license, he was subject to custodial arrest. Under *Robinson*, then, the full search was permissible. In regard to the pretext issue, the government argues that the validity of an arrest should be judged by an objective standard and not by the arresting officer's subjective motives. Thus, since there was a valid basis for a custodial arrest, independent of improper motivations, the arrest and search were proper.

■ Preliminarily, Officer Kukulka testified and Keller argues that it is not illegal to drive on a prior traffic ticket. Although this practice apparently has no statutory basis, the Illinois Appellate Court has commented on its validity several times. *People v. Morrison*, 57 Ill.App.3d 468, 15 Ill.Dec. 174, 373 N.E.2d 520 (1978); *People v. Cannon*, 18 Ill.App.3d 781, 310 N.E.2d 673 (1974); *People v. Jordan*, 11 Ill.App.3d 482, 297 N.E.2d 273 (1973). Thus, it is an open question whether driving on a prior ticket is sufficient indicia of criminality to justify a full custodial arrest on the principles in *People v. Brown*, 38 Ill.2d 353, 231 N.E.2d 577 (1967) and *People v. Pritchett*, 75 Ill. App.3d 127, 30 Ill.Dec. 810, 393 N.E.2d 1157 (1979). Even if it is not sufficient, however, when the police officer elects to transport the driver in the squad car to post bond, then a full search of the driver is permissible. *Gustafson v. Florida*, 414 U.S. 260, 93 S.Ct. 1494, 36 L.Ed. 177 (1973); *People v. Redmond*, 73 Ill.App.3d 160, 29 Ill.Dec. 838, 390 N.E.2d 1364 (1979). Since Kukulka told Keller before the search was conducted that he was taking Keller in, the search apparently was permissible. However, as Keller argues, the pretext issue may taint all of Kukulka's actions.

The invalidity of a pretextual arrest was articulated many years ago by the Supreme Court: "An arrest may not be used as a pretext to search for evidence." *United States v. Lefkowitz*, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877 (1932). This principle has been followed by many courts, *United States v. Hellman*, 556 F.2d 442 (9th Cir. 1977); *Amador–Gonzalez v. United States*, 391 F.2d 308 (5th Cir. 1968); *Taglavore v. United States*, 291 F.2d 262 (9th Cir. 1961); *People v. Fox*, 62 Ill.App.3d 854, 20 Ill.Dec. 84, 379 N.E.2d 917 (1978); *People v. Lichtenheld*, 44 Ill.App.3d 647, 3 Ill.Dec. 296, 358 N.E.2d 694 (1976), and since *United*

*States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the issue has acquired added significance. In *Robinson*, the Court decided there is no reason to limit a search incident to a minor traffic arrest, because "[i]t is the fact of the lawful arrest [for any reason] which establishes the authority to search." 414 U.S. at 235, 94 S.Ct. at 476. The *Robinson* dissenters, however, realized a potential for abuse of the authority to search granted by the majority's opinion. Justice Marshall noted, "There is always the possibility that a police officer, lacking probable cause to obtain a search warrant, will use a traffic arrest as a pretext to conduct a search." 414 U.S. at 248, 94 S.Ct. at 482. Since the *Robinson* majority opinion was based on the existence of a valid arrest, the pretext issue was not addressed or resolved.

The government, here, has relied on a First Circuit case which significantly curtails the applicability of a pretext arrest argument. In *United States v. McCambridge*, 551 F.2d 865 (1st Cir. 1977), the court stated that ordinarily an arrest is judged by "an objective standard rather than by inquiry into the officer's presumed motives." 551 F.2d at 870. In that case, the defendant driver was initially stopped for following too closely to another car and the state law authorized an arrest for such a violation. Further, there was no evidence that the stop was pretextual because the sheriff had just stopped another car for the same reason. Thus, the court held the arrest and search valid.

The *McCambridge* decision, however, is not persuasively controlling here for two reasons. First, the rationale of the decision virtually eliminates the possibility of ever proving a pretextual arrest. If every arrest were judged by an objective standard and upheld if there was a valid basis for arrest, then there could never be a pretextual arrest. The concept assumes that there is a basis for an arrest, but that the arrest is made for the purpose of conducting a search for which there would not otherwise be a justification. Although proving subjective motives is unquestionably problematic, *see* LaFave, *Search and Seizure*

§ 5.2(e) at 285 (1978), to judge an arrest by an objective standard ignores, instead of solves, the problem. Since fourth amendment jurisprudence should be based upon a "jealous regard for maintaining the integrity of individual rights", *Mapp v. Ohio*, 367 U.S. 643, 647, 81 S.Ct. 1684, 1687, 6 L.Ed.2d 1081 (1961), the *McCambridge* approach is inappropriate.

In any event, there is a significant factual distinction which provides a second reason for not following *McCambridge*. In that case, the court found no evidence that the traffic stop was pretextual, so it was left with the task of determining the officer's motivation. In this case, there is no doubt that the traffic stop was pretextual because Officer Kukulka frankly admitted that. Thus, there is direct proof and no need to engage in the difficult balance of circumstantial evidence of pretext against an objectively valid basis for arrest.

A second case, from the Eighth Circuit, is arguably applicable here and should also be considered. In *United States v. Hollman*, 541 F.2d 196 (8th Cir. 1976), the court assumed that a traffic stop was pretextual, but it found that in the interval between the stop and search independent events occurred that justified an arrest and search. The intervening event was the tossing of heroin out the window of the stopped car as the agents approached. In this case, it might be argued that Keller's failure to produce his driver's license was an intervening, independent event justifying an arrest and search.

Again, however, a fundamental consideration justifies a rejection of the *Hollman* rationale. That decision, in effect, rewards the officer for his subterfuge; his pretextual stop successfully uncovers other incriminating conduct or evidence and then the government is permitted to use that evidence. This approach fails to acknowledge that the intervening basis for arrest is still the product of initial illegal action. The better rule in this situation is enunciated in *Taglavore v. United States*, 291 F.2d 262, 267 (9th Cir. 1961): intervening events

cannot remove the taint from the evidence acquired by subterfuge.

 Finally, since the Supreme Court has continually emphasized that the primary purpose of the exclusionary rule is deterrence, suppression of evidence derived from deliberate misconduct is particularly appropriate. In a concurring opinion, Justices Powell and Rehnquist noted the pretextual arrest as an example where "the deterrent value of the exclusionary rule is most likely to be effective, and the corresponding mandate to preserve judicial integrity . . . most clearly demands the fruits of official misconduct be denied." *Brown v. Illinois*, 422 U.S. 590, 611, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J. concurring) (citations omitted). Thus, since the technical traffic violation stop of Keller was purely pretextual, all evidence derived from it should be suppressed.

Accordingly, defendant's motion to suppress is granted.