[No. A026472. First Dist., Div. Four. Aug. 26, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
McKENZIE FRANKLIN, JR., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Certified for publication except as to part II. (Cal. Rules of Court, rules 976(b) and 976.1.)

COUNSEL

Robert Fiedler, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Ann K. Jensen, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**ANDERSON, P. J.**—Defendant, McKenzie Franklin, Jr. (hereafter appellant or Franklin), appeals from a conviction entered upon a guilty plea.

On May 25, 1983, at approximately 8:30 a.m., two black men robbed Harud Piringian, the owner of a shoe store in Terra Linda shopping center, San Rafael, California. The first man entering the store (later identified as codefendant James D. Moss) was carrying a white tennis bag. While Moss

was talking to the shopowner, a second man (identified subsequently as appellant) entered the store equipped with a large-barrelled shotgun displaying it in a menacing fashion. After Moss tied up Piringian, the pair walked around the shop, took money from the cash drawer and left the bound-up owner behind the counter. The holdup lasted about five minutes.

Soon after the robbers departed, the incident was reported to the police. Officer John Coen of the San Rafael Police Department received a radio dispatch about the robbery circa five minutes later. The first broadcast described the suspects as two male Negroes and alerted the police to the fact that a shotgun had been used in the commission of the crime. Following the radio dispatch, Coen drove to a position at the top of Lincoln Avenue near the freeway that, as a matter of standard practice, is occupied by the officers after reports of major crimes. From this vantage point Officer Coen soon noticed a "red-over-grey" car with two Negro males taking the Lincoln Avenue turnoff. Coen followed the car southbound on Lincoln. In the meanwhile, an updated report was radioed advising that the weapon used in the commission of the robbery had been a sawed-off shotgun and that one of the suspects was carrying a white tennis bag. In following appellant's vehicle, Officer Coen observed that the car's registration had expired and also that one of the rear brake lights was not working. Coen then decided to stop the car for traffic violations and requested a backup officer.

Paganinni, the officer arriving at the scene, recognized Franklin and informed Coen that Franklin was a known burglar. As the traffic stop continued, Franklin voluntarily alighted from his car and walked toward Coen's vehicle. Coen himself got out of his automobile and discussed with Franklin the causes necessitating the traffic stop. As they were talking, appellant's passenger, Moss, also exited the vehicle leaving its left door open. Paganinni, who went over to Moss, saw in plain view, a white tennis bag lying on the floorboard of the car. The sighting of this new evidence, along with the information already known, made the officers suspicious that appellant and his companion might have been involved in the Terra Linda robbery. As a consequence, the officers, as a matter of safety, pat-searched both suspects and also checked their vehicle for weapons. A shotgun shell turned up during the pat-down search of Franklin and a sawed-off shotgun was found under the passenger seat of the vehicle.

Based upon the new-found evidence, appellant and Moss were arrested. Shortly thereafter, an in-field identification procedure was conducted in which the suspects were placed in a live lineup consisting of "three or four" persons of similar description. Following a careful and repeated viewing, Piringian positively identified both appellant and Moss as the perpetrators of the robbery.

In the ensuing criminal complaint (and an identical information filed later) appellant and Moss[1] were charged with robbery (Pen. Code,[2] § 211) and possession of a sawed-off shotgun (§ 12020, subd. (a)). At the preliminary hearing appellant filed a section 1538.5 motion to suppress the evidence seized as a result of the stop and search and the in-field identification made by the victim. The magistrate granted both motions,[3] but denied appellant's additional request to suppress the in-court identification of appellant made at the preliminary hearing.

The superior court reversed the suppression orders of the magistrate and upheld the magistrate's ruling with respect to the validity of the in-court identification. Thereupon, appellant pled guilty to both counts of the information and was sentenced to an aggregate term of five years in state prison.

Appellant launches a two-pronged attack on the judgment of conviction. First, he contends that the stopping of his car and the ensuing search were unlawful and that the evidence obtained as a result thereof should have been suppressed by the trial court. Secondly, appellant maintains that the in-field identification at bench was impermissibly suggestive and should have been also excluded from evidence. We find no merit to either of these contentions and affirm the judgment.

I

SEARCH AND SEIZURE

Appellant's detailed claim is that the search and seizure in this case were invalid because: (a) the stopping of his car for a minor traffic violation was merely a pretext to obtain evidence of another crime (*Amador-Gonzalez* v. *United States* (5th Cir. 1961) 391 F.2d 308; *Taglavore* v. *United States* (9th Cir. 1968) 291 F.2d 262; *United States* v. *Keller* (N.D.Ill. 1980) 499 F.Supp. 415; *Blazak* v. *Eyman* (D.C. Ariz. 1971) 339 F.Supp. 40); (b) the pat-down search incident to a traffic violation was improper (*Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]; *People* v. *Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099]; *People* v. *Superior Court* (1972) 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205]); (c) the officer exceeded the scope of a permissible pat-down search by viewing the shotgun shell in appellant's pocket (*Sibron* v. *New York* (1968) 392 U.S.

---

[1]Moss is not a party to this appeal, therefore, we do not specify the steps made by him in the proceedings below.

[2]Unless otherwise indicated, all statutory references are to the Penal Code.

[3]While the magistrate found that the in-field identification would have been valid, the latter evidence was also suppressed on the ground that it resulted from the allegedly illegal search.

40 [20 L.Ed.2d 917, 88 S.Ct. 1889]; *People* v. *Smith* (1971) 17 Cal.App.3d 604 [95 Cal.Rptr. 229]); and (d) the car search for weapons was unreasonable (*Michigan* v. *Long* (1983) 463 U.S. 1032 [77 L.Ed.2d 1201, 103 S.Ct. 3469]). The points raised by appellant are discussed seriatim.

### A. *Pretextual Search*

■ It is well settled that a police officer may stop a motorist to conduct a brief investigation and issue an appropriate citation when the officer observes a violation of the Vehicle Code. (*People* v. *McGaughran* (1979) 25 Cal.3d 577, 582 [159 Cal.Rptr. 191, 601 P.2d 207]; *People* v. *Superior Court, supra,* 7 Cal.3d 186, 200.) While a traffic stop or arrest may not be used solely for the purpose of discovering evidence of another charge (i.e., to effect a so-called pretext search) (*Taglavore* v. *United States, supra,* 291 F.2d at p. 265; *Blazak* v. *Eyman, supra,* 339 F.Supp. at p. 42), it is recognized that a police officer is not barred from investigating an unrelated offense if the circumstances give rise to probable cause that the traffic violator is or has been involved in the commission of another crime.

The above proposition is supported by both the federal and California state law. Thus, in *United States* v. *Hollman* (8th Cir. 1976) 541 F.2d 196 the defendant was under police surveillance for narcotic activities. When the police officers saw the defendant leaving in an automobile, they followed him and stopped the car for a traffic violation. On stopping, the defendant threw a small box out of the car. Defendant was then arrested. The ensuing search resulted in finding contraband (heroin) and a gun on his person. Defendant contended that the gun and narcotics were obtained as a result of a pretextual stop in violation of his Fourth Amendment rights. In rejecting defendant's argument, the federal court of appeals pointed out that while a traffic arrest may not be used as a pretext to search for evidence (*United States* v. *Lefkowitz* (1932) 285 U.S. 452, 467 [76 L.Ed. 877, 884, 52 S.Ct. 420, 82 A.L.R. 775]), the search and seizure of evidence supporting another crime are justified when in the course of the traffic stop probable cause develops suggesting the defendant's involvement in that crime (*United States* v. *Hollman, supra,* 541 F.2d at pp. 198-199). In *Klinger* v. *United States* (8th Cir. 1969) 409 F.2d 299, 306, the federal court likewise held that the existence, in fact, of probable cause for a robbery arrest prevented a vagrancy arrest from being pretextual.

The California cases also uphold traffic stops even if the officers are investigating other crimes. For example, in *People* v. *Jardine* (1981) 116 Cal.App.3d 907 [172 Cal.Rptr. 408], the officer had just received a radio dispatch that a nearby store had been robbed by two male Caucasians using a sawed-off shotgun. While the officer was driving to the scene, he observed

a van whose driver matched the general description of one of the perpetrators. The officer followed the van, stopped it for traffic violations and ordered the occupants out. A few minutes later other officers arrived at the scene. One of them looked into the van and found live shotgun shells scattered on the floor. After arresting the occupants of the vehicle, the officer conducted a car search during which the sawed-off shotgun was found. In upholding the legality of the stop and the search, the appellate court underlined that the traffic stop was proper because the driver of the car committed two traffic violations in the officer's presence. When the passengers got out of the car, the officers were able to see the live shotgun shells in plain view from outside the van. This observation, together with other informations known by the police officers about the robbery, provided probable cause to search the van for the shotgun, the instrumentality of that crime, because as the court emphasized "At this point the officers were no longer concerned with a traffic violation. This was a robbery investigation." (At p. 913.) In *People* v. *Mack* (1977) 66 Cal.App.3d 839 [136 Cal.Rptr. 283], Officer Koupal was following a Volkswagen because he was investigating the driver's involvement in other crimes. He stopped the car for traffic violations committed in his presence, made a pat-down search for his safety and in the course of the search he found credit cards in defendant's pocket. Similar to *Jardine,* the reviewing court held that both the traffic stop and search were legal despite the circumstance that at the time of the traffic arrest defendant was also under suspicion for committing other offenses (i.e., burglary and receiving stolen property).

▆ Appellant clearly falls within the above cited cases. While Officer Coen stopped appellant's vehicle for traffic violations committed in his presence, the officer was following appellant's automobile also for suspicion of the Terra Linda robbery. When during the vehicle stop additional crucial evidence appeared connecting appellant to the suspected robbery (i.e., a white tennis bag used in the commission of the robbery), the officer's initial suspicion ripened into probable cause giving legitimacy to both the pat-down search and the car search. To paraphrase *Jardine,* from the moment of the discovery of the white tennis bag appearing in plain view in appellant's car Officer Coen was no longer concerned with traffic violation but the whole matter turned into a robbery investigation supported by probable cause.

We briefly note that the pretext-search cases relied upon by appellant (*Amador-Gonzalez* v. *United States, supra,* 391 F.2d 308; *Taglavore* v. *United States, supra,* 291 F.2d 262; *Blazak* v. *Eyman, supra,* 339 F.Supp. 40; *United States* v. *Keller, supra,* 499 F.Supp. 415) are clearly distinguishable from the present instance. In each of all those cases the traffic arrest was made for the purpose of conducting search for which there would not have been a justification but for the traffic stop. By contrast, in the case at

bench the search for evidence of the robbery (i.e., the other offense) was made only after probable cause developed connecting appellant to the commission of that crime which independently of the legitimate traffic stop warranted the additional search based upon probable or reasonable cause.

## B. *Pat-down Search*

■ Appellant next contends that the pat-down search conducted by Officer Coen was unlawful because a stop for a traffic violation does not give the police officer the right to make a pat-down search on the defendant's person. (*People* v. *Brisendine, supra,* 13 Cal.3d at pp. 536-537.) We disagree.

■ It is well settled that the police officers have the right to conduct a pat-down search for weapons when they have specific and articulable suspicion that the person detained for a traffic violation is armed and dangerous. (*Pennsylvania* v. *Mimms* (1977) 434 U.S. 106, 111-112 [54 L.Ed.2d 331, 337, 98 S.Ct. 330]; *People* v. *Craig* (1978) 86 Cal.App.3d 905, 912 [150 Cal.Rptr. 676]; see also *Terry* v. *Ohio, supra,* 392 U.S. 1, 27 [20 L.Ed.2d 889, 909]; *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].) As also emphasized in cases, in order to justify a weapon search incident to a lawful detention or stop, the officers need not be absolutely certain that the detainee is armed. The issue rather is whether a reasonably prudent man under similar circumstances would be warranted in his belief that his safety was in danger. (*Terry* v. *Ohio, supra,* 392 U.S. at p. 27 [20 L.Ed.2d at p. 909]; *People* v. *Suennen* (1980) 114 Cal.App.3d 192, 199 [170 Cal.Rptr. 677]; *People* v. *Allen* (1975) 50 Cal.App.3d 896, 902 [123 Cal.Rptr. 80].)

■ In the case at bench there were specific and articulable facts known to Officer Coen which amply justified the pat-search at issue. Officer Coen knew that a robbery had just occurred and the perpetrators had used a shotgun. He went to a location where he could view and survey the area in which the potential suspects might be found. A few minutes later he indeed observed two men matching the general description of the suspects. While he stopped the suspects, he was informed by Paganinni, the summoned backup officer, that appellant was a known burglar. Moreover, he also learned from Paganinni that there was a white tennis bag in appellant's car, i.e., the very tennis bag which had been reported to have been carried by one of the robbers. From these facts Officer Coen could reasonably infer that appellant and his companion had been involved in the reported Terra Linda robbery. Since it was also reported that the robbers had used a deadly weapon (i.e., a sawed-off shotgun) in the commission of the violent crime,

Coen was entirely justified to conduct a pat-down search "[a]s a matter of safety."

In brief, in the case at bench, the pat-search was conducted not incident to a traffic stop, but rather on the ground of a reasonable suspicion that appellant and his companion had been involved in an armed robbery just minutes before and that they might pose a deadly danger or threat to the safety of the police officers.

### C. *Viewing of Shotgun Shell*

■ Appellant's next complaint that the officer exceeded the proper scope of a pat-down search because by a manipulation of appellant's pocket he made a shotgun shell, a nonweapon, visible, is also without merit and must fail for two elementary reasons.

■ One, it is recognized that the pat-down search permissible under *Terry* and its progeny is limited to weapons search, i.e., to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer. (*Terry* v. *Ohio, supra,* 392 U.S. at p. 29 [20 L.Ed.2d at p. 910]; accord *People* v. *Leib* (1976) 16 Cal.3d 869 [129 Cal.Rptr. 433, 548 P.2d 1105]; *Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150 [98 Cal.Rptr. 649, 491 P.2d 1]; *People* v. *Mosher* (1969) 1 Cal.3d 379 [82 Cal.Rptr. 379, 461 P.2d 659].) ■ There is case authority to the effect that a shotgun shell could be used as a detonator. (*People* v. *Atmore* (1970) 13 Cal.App.3d 244, 247 [91 Cal.Rptr. 311].) As a consequence, the shotgun shell may qualify as "a hidden instrument for the assault of the police officer" thus, a "weapon" within the definition of *Terry* and its progeny.

Two, but even assuming arguendo that an ammunition clip is not a dangerous weapon suitable to imperil the officer's safety (*People* v. *Smith, supra,* 17 Cal.App.3d 604, 606), the viewing of the shotgun shell by Officer Coen must be held harmless in the present case because it did not play any role in either the charge or the conviction of appellant (*Warden* v. *Hayden* (1967) 387 U.S. 294, 310 [18 L.Ed.2d 782, 793-794, 87 S.Ct. 1642]).

In view of the above points it need not be decided whether appellant's contention should be rejected for the additional reason that Officer Coen could feel the size and the shape of the shotgun shell in the course of the pat-down search even without making it visible.

### D. *Weapon Search of Car*

■ Appellant's contention pertaining to the legality of the car search may also be discussed in a brief fashion.

In *Michigan* v. *Long, supra,* 463 U.S. 1032, 1049 [77 L.Ed.2d 1201, 1220, 103 S.Ct. 3469, 3480], the United States Supreme Court held that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." (Accord *Terry* v. *Ohio, supra,* 392 U.S. at p. 21 [20 L.Ed.2d at p. 906].)

In the case at bench the officers possessed specific and articulable facts reasonably warranting their belief that appellant and his companion had been involved in the robbery of the shoe store; that they were still in the possession of the sawed-off shotgun used in the commission of the robbery; that the shotgun, a lethal weapon, was hidden in their vehicle; and that they might gain access to the weapon. Under these circumstances the officers were fully justified in conducting a weapon search in appellant's automobile and the sawed-off shotgun found under the seat of the car was properly admitted in evidence. (*Michigan* v. *Long, supra,* 463 U.S. 1032 [77 L.Ed.2d 1201, 103 S.Ct. 3469]; *People* v. *Jardine, supra,* 116 Cal.App.3d at p. 913.)

## II*

### IN-FIELD IDENTIFICATION

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Poché, J., and Sabraw, J., concurred.

---

*Part II of this opinion is not certified for publication. (See fn., *ante,* at p. 627.)