Filed 4/3/14  P. v. Jones CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>LONNIE M. JONES,<br><br>     Defendant and Appellant. | A139395<br><br>(Contra Costa County<br>Super. Ct. No. 51211697) |

Defendant Lonnie M. Jones appeals from the trial court's denial of his motion to suppress evidence.  He argues the court should have ruled the evidence was obtained as the result of his unlawful detention just outside the Bay Area Rapid Transit (BART) station in Concord, California.  We disagree and affirm.

## BACKGROUND

In an information as amended, the Contra Costa County District Attorney charged defendant with second degree robbery (Pen. Code, §§ 211/212.5, subd. (c)),[1] the use of a dangerous weapon (§ 12022, subd. (b)(1)), and grand theft (§ 487, subd. (c)).  Defendant moved to suppress evidence, which motion was heard in June 2013.

Concord Police Officer Sean Donnelly testified that on June 14, 2012, a weeknight, about 9:05 p.m., he, still in uniform and armed, was gassing up his marked police car right by the Concord police station before going home.  He heard a dispatch broadcast that an armed robbery had just taken place at a Safeway store several blocks

---

[1] All statutory references are to the Penal Code unless otherwise noted.

1

away. As other officers drove out of the police station with car lights and sirens on to investigate, Donnelly decided to drive slowly in a bus lane to the Concord BART station that was across the street from the police station. Donnelly put on his headlights, but did not activate his emergency lights or siren.

Donnelly, a police officer for 18 years who by his own estimate had investigated 100 robberies or more, went to the BART station because in his experience criminals "often" went there to flee the area. At 9:07 p.m., as he drove slowly in the bus lane, he saw defendant sprinting towards him from the direction of the Safeway store; the BART station entrance was about 50 feet behind Donnelly. The BART station was open but there were "hardly any other people out at this time," and no one else was running. Donnelly did not have a description of any robbery suspect at the time, but suspected defendant was the perpetrator.

Donnelly further testified that, as defendant and he got closer to each other, defendant appeared to look at him, "abruptly stopped running," and "just started walking." Without blocking defendant's path, Donnelly got out of the driver's side of the police car and stood behind the car door. From a distance of about 20 or 25 feet, he asked defendant in a conversational tone something like, "Hey, did you just come from Safeway?" There was no train going by and no street traffic noise. In response, defendant stopped walking, put his head down and said, "Yes." Donnelly then asked if defendant had a gun and "he said something to the effect of yeah, but [it's] not a real one."

Donnelly said, acting for his own and public safety, drew his gun, moved toward defendant, ordered him to the ground, searched his person and backpack, and found a black replica firearm and a woman's orange purse. The victim arrived at the scene about 10 or 15 minutes after Donnelly first contacted defendant, identified her purse, and said defendant was the man who had robbed her. Defendant was then arrested.

After hearing from Donnelly, defendant, and his guardian (whose testimony the trial court discounted, and argument from counsel, the court ruled the detention occurred when Donnelly asked defendant if he was coming from Safeway and was justified based

2

on the officer's suspicions, which were reasonable under the circumstances. Accordingly, the court denied defendant's motion to suppress.

Immediately after the hearing, defendant entered a no contest plea pursuant to a negotiated disposition and was placed on probation for three years, subject to various terms and conditions. Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant agrees with the trial court that he was detained upon Donnelly asking him if he had come from Safeway, but disagrees with the court's determination that Donnelly had a legal basis for doing so. The subsequent information and evidence obtained from defendant, including the gun and purse Donnelly found in defendant's backpack, were the fruits of this unlawful detention and, therefore, the trial court should have granted his motion to suppress.

Defendant's argument lacks merit. We disagree with the trial court on one issue. In our view, Donnelly did not detain defendant when he asked defendant if he was coming from Safeway. However, our disagreement is meaningless because we also conclude Donnelly would have been justified to do so, and certainly was justified to do so after defendant said he was coming from Safeway and possessed a gun that was "not real." Therefore, the trial court correctly denied defendant's motion.

Initially, while we accept the trial court's assessment of the facts, we must exercise independent judgment in determining whether its conclusion about the point of detention was correct. (*People v. Hoyos* (2007) 41 Cal.4th 872, 891, abrogated on another ground by *People v. McKinnon* (2011) 52 Cal.4th 610, 641.) We apply an objective standard—would a reasonable, innocent person in defendant's circumstances believe he or she was not free to leave or otherwise terminate the conversation? (*Florida v. Bostick* (1991) 501 U.S. 429, 436, 438.) Accordingly, we do not consider that Donnelly was investigating the robbery at Safeway because he did not tell defendant he was doing so. We do, however, consider that defendant was sprinting to the BART station and slowed to a walk upon happening on Donnelly's police car, and all other

3

circumstances which we can reasonably infer defendant was aware of at the time he encountered Donnelly.

We conclude a reasonable, innocent person in defendant's circumstances would not consider himself or herself detained upon being asked by Donnelly if he was coming from a nearby Safeway store. Donnelly did not act out of the ordinary toward defendant. For example, he did not drive toward defendant at a high rate of speed, screech to a halt, activate his emergency lights or siren, shine a spotlight on defendant (Donnelly's headlights were on, as it was 9:00 p.m.), approach defendant, draw his weapon, raise his voice, command or ask defendant to stop, or ask him any questions suggesting a detention. Instead, Donnelly stopped his slow-moving police car in a BART station bus lane, got out, and stood behind the car door as he asked defendant in a conversational tone if he was coming from the Safeway store. The cases cited by defendant are inapposite to these comparatively mundane facts. (See *People v. Garry* (2007) 156 Cal.App.4th 1100, 1103-1104, 1112 [officer in a high crime area shone a spotlight on the defendant standing on a corner next to a parked car, rushed towards him, and said he wanted to confirm that defendant lived nearby, as defendant asserted, and asked his parole status]; *People v. Roth* (1990) 219 Cal.App.3d 211, 213 [officers shone a spotlight in the defendant's face and approached him as he walked alone in a parking lot about 1:20 a.m., saying they wanted to talk to him]; and *People v. Jones* (1991) 228 Cal.App.3d 519, 521-522 [officer pulled over his police car on the wrong side of the road and parked diagonally against traffic, stepped out of the car and, as the defendant began walking away, told him to stop].) In short, Donnelly's actions and initial question did not suggest any coercive action, nor suggest he was investigating possible criminal activity. Donnelly made a simple inquiry, and a reasonable, innocent person could have easily assumed he was soliciting information about something occurring at or around the Safeway unrelated to criminal activity, such as a medical emergency or car accident. Therefore, defendant and the trial court are incorrect in concluding defendant was detained upon Donnelly asking if he was coming from the Safeway store.

4

Nevertheless, even assuming that a detention had occurred when Donnelly asked this first question, we agree with the trial court that Donnelly had the requisite reasonable suspicion to justify such a detention under the circumstances. When determining the lawfulness of a temporary detention, we review the totality of the circumstances to see whether the detaining officer had a particularized and objective basis "for suspecting the particular person stopped of criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 230.) Such was the case here. Two minutes before encountering defendant, Donnelly heard an armed robbery had just taken place at a Safeway store several blocks away, and knew other officers had sped towards the Safeway in police cars, sirens and lights on, to investigate. A veteran police officer, he knew from his own experience that persons committing crimes in the area "often" fled the scene via the nearby BART station. He saw defendant carrying a backpack sprinting from the direction of the Safeway store toward the BART station entrance, only to abruptly slow to a walk when he noticed Donnelly in his marked police car. No one else was running, whether from the direction of Safeway or otherwise, there was no train going by, and there were very few people around at 9:10 p.m. on a weeknight. Even though Donnelly did not have a description of the robbery suspect at the time of the encounter, we conclude these undisputed facts were sufficient for him to have a particularized and objective basis for suspecting defendant could have been involved in the Safeway armed robbery, and to justify defendant's detention. (*People v. Conway* (1994) 25 Cal.App.4th 385, 390 [upholding a police officer's detention of a defendant and a companion, who police stopped in a car at three in the morning, with no one else around, a quarter mile from the burglarized premises and less than two minutes after receiving a report of a burglary in progress, although the officer had no description of the suspects or whether they had a car].)

Also, based on his reasonable suspicions (suspicions which were confirmed when defendant indicated he possessed a weapon of some sort), Donnelly clearly detained defendant when he drew his weapon and ordered defendant to the ground. That detention was entirely reasonable under the circumstances. (*People v. Souza*, *supra*, 9 Cal.4th at pp. 230-231.) This is a second, independent reason for affirming the trial court's denial

of defendant's motion. (*People v. Superior Court* (*Chapman*) (2012) 204 Cal.App.4th 1004, 1011 ["[a]ppellate review is confined to the correctness or incorrectness of the trial court's ruling, not the reasons for its ruling"].)

Finally, defendant's argument, made for the first time on appeal, that Donnelly was not justified in searching defendant's backpack because he did not first pat down the backpack, borders on being frivolous. Defendant acknowledged to Donnelly that he had a gun, albeit one that purportedly was not real. Donnelly was not obligated to believe that the gun was not real and had every right as a matter of officer and public safety to secure it from the backpack. (*Terry v. Ohio* (1968) 392 U.S. 1, 24; *People v. Franklin* (1985) 171 Cal.App.3d 627, 635-636.)

## DISPOSITION

The trial court's order denying defendant's motion to suppress is affirmed.

_____
Brick, J.*

We concur:

_____
Haerle, Acting P.J.

_____
Richman, J.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.