Filed 4/21/16  P. v. Estrada-Gomez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | G051468 |
| v. | (Super. Ct. No. 14HF2821) |
| VICTOR LIBRANO ESTRADA-GOMEZ, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Kazuharu Makino.  Affirmed.

Tony Rackauckas, District Attorney, and George Turner, Deputy District Attorney, for Plaintiff and Appellant.

Michael Ian Garey for Defendant and Respondent.

\*          \*          \*

After a police officer initiated a traffic stop of defendant Victor Librano Estrada-Gomez, a consensual search led to the discovery of a large amount of heroin. A magistrate denied defendant's motion to suppress evidence of the heroin, but the trial court granted defendant's motion to set aside the information. The district attorney contends this was error. We disagree and affirm order setting aside the information.

## FACTS AND PROCEDURAL BACKGROUND

The district attorney filed a complaint charging defendant with possession for sale, and the transportation of, a controlled substance, along with weight allegations and an enhancement. Defendant moved to suppress the evidence as the result of an unlawful detention. (Pen. Code, § 1538.5.)

At the hearing, police officer Michael Fletcher, a trained narcotics officer and a "K-9" handler, testified that while driving a marked police vehicle, he observed a Toyota Scion with "taillights [that] appear[ed] to have a smoked appearance . . . or a tinting or glazing to them to darken their appearance." Because he believed the taillights to be in violation of Vehicle Code section 26101, subdivision (b) (all further undesignated references are to this code), Fletcher pulled the Scion over.

Fletcher was familiar with Scions because his brother owned one. Also the taillights on defendant's Scion appeared to be darker than what he had seen on factory versions. He did not claim "to be an expert on the different lens covers that the [Sc]ion automobile people have used over the years for their various different models." While following defendant, Fletcher was able to see the brake lights and the turn lights employed. At no point did Fletcher walk to the rear of the Scion to determine if the taillights had in fact "been smoked, altered, [or] darkened." He admitted on cross-

2

examination that he previously had been alerted to the vehicle and told to develop his own reasons to stop and search the Scion. The magistrate admitted the testimony over objection, finding the testimony relevant to Fletcher's credibility.

After defendant pulled over, Fletcher approached the vehicle, told defendant the purpose for the stop, and asked for his driver's license. Defendant granted Fletcher permission to search the vehicle. Fletcher did so with the assistance of his dog and discovered over three kilograms of heroin.

At the close of the hearing, the magistrate denied the suppression motion, stating, "I believe that the photos and the video corroborate Officer Fletcher's testimony, to wit that he believed that there was some modification to the lenses of the taillights in violation of section 26101."

The district attorney filed an information repeating the allegations of the earlier complaint. Defendant moved to dismiss the information under Penal Code section 995, again asserting, among other things, the initial detention was unlawful.

After hearing argument from the parties and reviewing the papers, exhibits, and the videotape, the trial judge granted the motion. "I just don't even see any kind of modification. [¶] There was no testimony about them examining the lights and seeing yes, there was a modification. I mean, the only thing we have is the officer looking from the back and seeing the back of the car, which anybody can see from the video, including me. . . . I don't see anything wrong there. Where is the evidence that in fact there was a modification?" "And if they are saying, 'Well, you can tell it's modified because it's darker,' and I am looking at it and saying 'No, I can't.'" The court dismissed the case.

DISCUSSION

*1. Standard of Review*

On appeal from the granting of a defendant's motion under Penal Code section 995, we "'disregard[] the ruling of the superior court and directly review[] the determination of the magistrate.'" (*People v. San Nicolas* (2004) 34 Cal.4th 614, 654.) To uphold the search we must conclude, under the facts found by the magistrate, that Fletcher harbored a reasonable suspicion for suspecting defendant of criminal activity. (*Whren v. U.S.* (1996) 517 U.S. 806, 809-810 [116 S.Ct. 1769, 135 L.Ed2d 89] (*Whren*); *People v. White* (2003) 107 Cal.App.4th 636, 641.) "[W]e review the magistrate's factual determinations under the substantial evidence standard. [Citation.] We judge the legality of the search by 'measur[ing] the facts, as found by the trier, against the constitutional standard of reasonableness.' [Citations.] Thus, in determining whether the search or seizure was reasonable on the facts found by the magistrate, we exercise our independent judgment." (*People v. McDonald* (2006) 137 Cal.App.4th 521, 529.) "The prosecution retains the burden of proving that the warrantless search or seizure was reasonable under the circumstances." (*People v. Williams* (1999) 20 Cal.4th 119, 130.)

*2. Insufficient Evidence to Support a Reasonable Suspicion of a Vehicle Code Violation*

The police may conduct a traffic stop if the circumstances show a reasonable suspicion that the driver has violated the Vehicle Code or some other law. (*People v. Durazo* (2004) 124 Cal.App.4th 728, 734-735.) A reasonable suspicion requires a showing of specific and articulable facts that would cause a reasonable officer in a like position, drawing on the officer's training and experience, to believe a violation has occurred or is about to occur. (*In re Tony C.* (1978) 21 Cal.3d 888, 893, superseded

4

by statute on other grounds as stated in *In re Christopher B.* (1990) 219 Cal.App.3d 455, 560, fn. 2.)  Reasonable suspicion is something more than an inchoate and unparticularized suspicion or hunch, but something less than the fair probability required for probable cause.  (*People v. Bennett* (1998) 17 Cal.4th 373, 387.)  "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity."  (*People v. Souza* (1994) 9 Cal.4th 224, 231.)

"The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable.  We do not examine the subjective understanding of the particular officer involved."  (*Heien v. North Carolina* (2014) __ U.S. __, __ [135 S.Ct. 530, 534, 539; 190 L.Ed.2d 475] [no Fourth Amendment violation found where officer's mistaken belief that required two working brake lights was reasonable].)  "[T]he reasonableness of an officer's stopping a vehicle is judged against an objective standard:  would the facts available to the officer at the moment of the stop '"warrant a man of reasonable caution in the belief" that the action taken was appropriate[?]'"  (*People v. Rodriguez* (2006) 143 Cal.App.4th 1137, 1148.)  "If the officer turns out to have been mistaken the mistake must be one which would have been made by a reasonable person acting on the facts known to the officer at the time of the stop.  Under the foregoing test, a traffic stop will not violate the Fourth Amendment if the officer making the stop reasonably suspects the violation of a traffic law even if later investigation dispels that suspicion."  (*Id.* at pp. 1148-1149.)  In other words, an officer's suspicion need not be substantiated later as accurate (*People v. Saunders* (2006) 38 Cal.4th 1129, 1136), since "[t]he officer's duty is to resolve—through investigation—any

ambiguity presented as to whether the activity observed is, in fact, legal or illegal." (*Brierton v. Department of Motor Vehicles* (2005) 130 Cal.App.4th 499, 510.)

Fletcher testified he stopped defendant's vehicle because its "taillights appear[ed] to have a smoked appearance . . . or a tinting or glazing to them to darken their appearance," in violation of section 26101, subdivision (b). That statute states, "A person shall not use upon a vehicle, and a person shall not drive a vehicle upon a highway that has installed a device that is intended to modify the original design or performance of a lighting, safety glazing material, or other device, unless the modifying device complies with Section 26104." Section 26104, subdivision (a) requires "[e]very manufacturer who sells, offers for sale, or manufactures for use upon a vehicle devices subject to requirements established by the department" to "have laboratory test data showing compliance with such requirements," "before the device is offered for sale," subject to proof of compliance upon request at any time. Reading the two statutes together, a person can drive a vehicle installed with a device that modifies its taillights as long as those lights were laboratory tested to show compliance with the applicable standards.

At the preliminary hearing, the magistrate denied the motion to suppress because he agreed "the photos and the video corroborate Officer Fletcher's testimony . . . he believed that there was some modification to the lenses of the taillights in violation of section 26101." But mere modification to the taillight lenses is not sufficient to constitute a violation of section 26101.

Section 26104 permits modification as long as it complies with applicable standards. Here, the prosecution did not present any evidence from which it could be inferred that the taillights of defendant's vehicle (1) were installed with a device that modified its taillights, or (2) that any such modification was not laboratory tested and approved. As defendant notes, "Fletcher never stated that he saw any 'device' or material

6

that altered the design or performance of the equipment on the Scion, and in fact never even inspected the brake light covers, as he approached the vehicle, not at any time." Fletcher only testified the taillights appeared smoked, tinted or glazed, and darker than those on factory models. He provided no foundation for that opinion. Instead he admitted he was not an expert on Scion taillights and that the stop was pretexual. (See *People v. Hernandez* (2003) 110 Cal.App.4th Supp. 1, 4, 5 [insufficient evidence to support reasonable suspicion that neon light around license plate violated section 25400, which allows diffuse, nonglaring light of 0.05 candela per square inch, where evidence did not indicate how bright the light was or whether it was diffuse or nonglaring].)

The district attorney maintains the magistrate impliedly determined Fletcher to be credible and that his testimony constituted substantial evidence to support the ruling. She asserts that "once these facts are accepted as true – as they must be on review – there is no room for legitimate dispute that . . . Fletcher was justified (at least to the level of reasonable suspicion) to investigate further about a possible violation of the Vehicle Code that he said he observed."

But that is not what Fletcher did. He testified he was told to come up with a reason to stop the car defendant was driving. And once Fletcher stopped the car, he made no attempt to investigate the alleged possible Vehicle Code violation. "[A] traffic stop . . . may not be used solely for the purpose of discovering evidence of another charge (i.e., to effect a so-called pretext search)." (*People v. Franklin* (1985) 171 Cal.App.3d 627, 633.) At the same time, a traffic "stop is [not] rendered illegal, as a 'pretextual' stop," by an officer's "subjective desire to search for narcotics" as long as the stop is determined to be "objectively reasonable" (*People v. Uribe* (1993) 12 Cal.App.4th 1432, 1436), i.e., one "which is reasonable based on the objective facts." (*Ibid*.; see *Whren, supra*, 517 U.S. at pp. 809-810, 813; *People v. Souza*, *supra*, 9 Cal.4th at p. 231

[reasonable suspicion requires only that "the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some *objective* manifestation that the person detained may be involved in criminal activity"; italics added].)

Having reviewed the photographs and the video of the traffic stop, along with Fletcher's testimony, we conclude substantial evidence does not support the magistrate's findings. In doing so, we are not persuaded by the district attorney's assertion "[t]he brake light covers are noticeably darkened, and basically appear 'blacked out' when the brake lights are not activated." All brake light covers would likely be noticeably darker or more "blacked out" when the brakes are not being used. The district attorney has not defined "blacked out" or provided any evidence to show defendant's taillights were "noticeably darke[r]" or more "blacked out" in comparison to other vehicles when their brakes are not in use.

The following cases are instructive. In *People v. Butler* (1988) 202 Cal.App.3d 602, the officer testified he stopped a vehicle because he observed a car at night with "darkened" windows, did not like the "'idea'" of a car with tinted windows, and made a traffic stop based on his suspicions about other conduct and to warn or issue a correction citation for the tinting. (*Id*. at pp. 604-605.) Noting that installed tinted windows complying with federal standards are legal, *Butler* found the record did not contain facts establishing that the windows "were made of illegally tinted, rather than legally tinted, safety glass" (*id*. at p. 606 & fn. 1), and rejected "the People's suggestion that seeing someone . . . driving with tinted glass raises a reasonable suspicion of illegality such that a reasonable inquiry is justified. Without additional articulable facts suggesting that the tinted glass is illegal, the detention rests upon . . . speculation." (*Id*. at p. 607.)

In contrast, *People v. Niebauer* (1989) 214 Cal.App.3d 1278 addressed the sufficiency of the evidence of a conviction for illegally tinted windows. In articulating a standard for evaluating the evidence, *Niebauer* held "a commonsense approach to the enforcement of this statute" should apply; "[i]f an officer forms an opinion in a commonsense examination of a vehicle that [the window] is obstructed in the fashion contemplated by the statute, such evidence will be sufficient . . . ; no further evidence or scientific testimony need by presented." (*Id*. at p. 1292.) *Niebauer* found substantial evidence to support the conviction where the windows were "darker than normal," the officer could see only the outline of the driver through the window, and the officer had seen other drivers with equivalent tinting needing to roll down their windows at night to see where they were turning. Although the case did not involve a search and seizure, *Niebauer* noted in dictum that this evidence also justified the officer's traffic stop. (*Id*. at pp. 1292-1293 & fn. 10.) It distinguished *Butler* as involving only a "bare statement" that the windows were "tinted." (*Id*. at p. 1293 & fn. 10.)

Similarly, the officer in *People v. Hanes* (1997) 60 Cal.App.4th Supp. 6 made a nighttime traffic stop, having observed a black Mustang cross in front of him at a traffic light with a passenger window that appeared almost as dark as the car's paint, through which the officer could not see the occupants. The officer had stopped vehicles about 400 times for tinting violations. (*Id*. at p. 8.) *Hanes* concluded that it was proper to give "considerable weight" to the experience of an officer in assessing the reasonableness of the officer's suspicions. (*Id*. at p. 9.) It distinguished *Butler, supra*, 202 Cal.App.3d 602, as lacking the additional facts of officer experience or a description of the basis for his belief that the tint was illegal, leaving the bare assertion of a dislike of tinted windows. (*Hanes, supra*, 60 Cal.App.4th Supp. 6 at pp. 9-10.) Therefore, *Hanes* upheld

9

the traffic stop on the basis of the officer's experience and description of the window being as dark as the black paint, blocking his view of the occupants. (*Id.* at p. 10.)

Federal courts likewise hold that a stop cannot be based on an officer's unsupported opinion that a traffic violation has occurred. (See *United States v. Sowards* (4th Cir. 2012) 690 F.3d 583, 592, 594 [officer's visual estimation that vehicle was traveling 5 miles past the speed limit held an insufficient basis to stop vehicle absent "additional indicia of reliability to support probable cause" because otherwise it was a conclusory guess without appropriate foundation); *U.S. v. Lopez-Valdez* (5th Cir. 1999) 178 F.3d 282, 289 [good faith but wrongful belief that broken taillight constituted vehicle code violation held insufficient where "no well-trained Texas police officer" would believe a traffic violation had occurred: although "a traffic infraction can justify a stop even where the police officer made the stop for a reason other than the occurrence of the traffic infraction . . . if officers are allowed to stop vehicles based upon their subjective belief that traffic laws have been violated even where no such violation has, in fact, occurred, the potential for abuse of traffic infractions as pretext for effecting stops seems boundless and the costs to privacy rights excessive"].)

The present case is more like *Butler*, *Sowards*, and *Lopez-Valdez* than *Niebauer* or *Hanes*. Fletcher testified he stopped the vehicle because its taillights appeared to be smoked or darkened with a glaze or tint. He did not, however, testify to additional facts giving him a reasonable suspicion that defendant was driving with illegally modified or glazed taillights. Section 24603, subdivisions (b) and (e) require two stoplamps that emit a red light plainly visible from 300 feet to the rear. No particular shade of red is mandated. Fletcher admitted he was able to see the brake lights and the turn lights employed as he was following defendant. The video and photographs admitted into evidence show the same.

10

Additionally, the record contains no evidence Fletcher had any experience in stopping any vehicles on suspicion of having illegally darkened taillights. Fletcher did testify the taillights on defendant's Scion appeared to be darker than what he had seen on factory versions. But Fletcher provided no basis from which a trier of fact could determine whether he had any experience with Scion taillights, much less the ones used on the particular model in this case. In fact, Fletcher admitted he was not an expert on the different lens covers used on the different models of Scion automobiles. Nor did he become such an expert based on the mere fact his brother owned a Scion, particularly since there was no evidence his brother had the same model as the one driven by defendant.

DISPOSITION

The order is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

THOMPSON, J.

11